Faehnrich, Judge Gould, please identify yourself for the record. Yes, and thank you, and good morning. Dennis Prince, appearing on behalf of Progressive Gulf Insurance Company. Thank you. Judge Gould has a question. Yeah, it's part question, part comment. I'm concerned about jurisdiction in this case, and I meant to get an order out before argument, but didn't. But if the panel agrees with me, then I'll send a post-argument order asking both parties to address why we have jurisdiction on the particular order that was entered denying summary judgment, which does not seem to be a final order, although both parties in their briefs say nothing remains to be done. So, you know, if you and your adversary can touch on jurisdiction in the argument, fine, but if not, if the panel goes along with my idea, we'll send out a note for self-briefing. Your Honor, thank you. I believe it is a final order because it was dispositive of all of the issues in the case. Was it? Under the terms of the policy, the accidents covered are those arising out of the use of a covered vehicle. And your position in trial was that this was not a covered vehicle because notice of change of residence from Mississippi to Nevada had not been given. Are you abandoning the defense that this is not a covered vehicle? No, Your Honor. It was not a covered vehicle under the policy. However, Tony Feinrich, she remained an insured under the terms of the policy. While the vehicle was, in fact, removed, she remained on the terms of the policy as an insured. Is there a finding made with respect to withdrawing the coverage of the vehicle? No, there wasn't. But nonetheless, she would have been covered even as a listed driver, Your Honor, irrespective of whether the vehicle was on or off the policy, because she never was her name was never taken off of the policy. By reason of being an insured, she would have the ability to claim liability coverage benefits if, in fact, there was coverage available for the accident. Even if she should have given notice of her change of residence from Mississippi to Nevada, where one might expect the rates to be different? Potentially, that's correct, Your Honor. That's the position that Progressive took. And what about the children? Because they're the ones injured. So is it clear they would still be, if you win your claim, that the insured exclusion doesn't apply? Is it clear they would have a claim under this policy? They would not have a claim under the policy, Your Honor, either for liability coverage or underinsured motorist benefits, under either one. One under the policy. The issue we're here to talk about is the household, the family exclusion, which precludes them, the children, making a claim under the policy because of the negligence of their mother, Tony, and there's no underinsured motorist coverage. So there would be no recovery under this policy. What about damage to the vehicle itself? Was there any claim for damage to the vehicle? And are you denying coverage because it was not? That's correct. There was no – because the vehicle was no longer listed, that's correct. Did the court below make a finding as to that issue? Did not. Are you abandoning that claim? Are you going to cover the vehicle anyway, as far as damage to the vehicle? That issue is not – was never an issue before the district court, the property damage to the vehicle. It was only declaratory relief on liability coverage. On the liability coverage only. That's correct. So the – that's one part of the coverage. The – one other part would be the collision coverage, which that was never part of the declaratory relief action, and there's no uninsured or underinsured motorist coverage for this particular policy. So the only coverage that we had left, Your Honor, would be simply the liability coverage, thereby invoking the household exclusion, which is the sole issue that we had before the district court. The reason I believe, going back, that this court has jurisdiction – Well, of course, if the exclusion applies, your claim is gone. But if it doesn't apply, can the plaintiff still make their claim, or is there any other defense that your client could put forward? No, Your Honor. If the exclusion is declared to be invalid under Nevada law, under Nevada choice of law principles, then the children would be entitled to recover up to Nevada's minimum financial responsibility, which is the $15,000 per person or $30,000 per occurrence limits. They would be subject to the minimum limits of liability, and that's under the Zobrist case, Your Honor. They would not be entitled to the $100,000 limits, which would be available under the Mississippi policy, because they've been validated. The Nevada Supreme Court in the Neal v. Farmers 566p2 declared under Nevada law that a household exclusion, like we're talking about here, is invalid up to the minimum financial responsibility law. Above and beyond that, it's valid. So therefore, the children assuming this court upheld the district court's decision and invalidated the Mississippi exclusion, then their only recovery would be the minimum financial responsibility under Nevada law. Certainly, when this policy was issued in rural Mississippi in 1999 by Progressive and given to the plaintiff, the expectation was that it was going to be ensuring a risk and enforced under Mississippi law. That Progressive at that time, and neither could the feigners reasonably argue, that they had an expectation that if someone fortuitously moved to another State without giving Progressive notice, that therefore they could thereby invoke the privileges under another State's law, which is different than Mississippi, to invalidate what would be an otherwise valid exclusion. And that's what we're here to talk about. The district court concluded below that the policy, the choice of law had a substantial relationship to Mississippi, which is clear on its face. Certainly, the Feinrichs had the benefit of paying a premium on a policy issued in rural Mississippi. But as I understand, the children moved to Las Vegas one day before this accident occurred or came out to visit their mother for the summer. Certainly, they are a resident of both the household at that point of Mr. Feinrich, living in Mississippi, and the mother who's now relocated to Nevada. And you can see the quagmire that a company like Progressive is in, trying to make sure they're ensuring a risk and collecting the appropriate premium for any loss that may occur fortuitously anywhere around the country. Scalia. Counsel, what do we know about the residency of the children and of Tony? Well, we know preliminarily, Your Honors, that Tony had moved to Las Vegas some months before the accident, because there had been a divorce between her and Randall. The children came out for the summer within one or two days of this accident happening. They stayed behind with Randall in Mississippi. And this is all in the record? Yes. All right. And undisputed. And they came out, I think, one or two days before, and then the accident occurred. I believe because of the custodial relationship, they're actually residents for insurance coverage purposes of both households. Think about this anomalous result, that if they're visiting their father in Mississippi and the identical accident occurs in a Mississippi risk, there's no coverage very clearly. If somehow they're fortuitously in Las Vegas, which Progressive would have no ability to control or control that risk, then all of a sudden their policies now become invalid under Nevada law. So assuming So you reach anomalous results unless you give harmony to Mississippi law. All right. But assuming, then, that they're residents, in effect, of both households, and Tony has been in Las Vegas long enough to suggest that she is a resident there of Nevada, the children then become Nevada residents, then the 1530 minimum applies, does it not? No, I don't think so, because you still have to deal with a Mississippi-based policy. Tony, to our knowledge, has no other available insurance. Her name was never taken off of the Progressive policy, nor did Progressive know that she had moved to Las Vegas, even though the vehicle that the Jeep Cherokee had issued had been, in fact, removed from the policy. She hadn't reported a change of address. And I believe no Nevada case, not one Nevada case, has ever held that the Nevada law applies where a policy was issued and delivered to a resident of another state. The only case where they've invalidated an effective choice of law provision is in the case of Daniels, where it was a Nevada resident, a widow, who has issued a group life insurance policy in the state of Nevada, but with a Missouri choice of law. That's the only case where that's occurred. No, the life insurance case. That's a life insurance case, which is separate and distinct. Now, the overriding policy consideration in Nevada, just because there's a difference in outcome between the respective states, does not mean, as a matter of law, that it violates Nevada public policy. In fact, indeed, as the authorities have recited in our papers to the court, you can see that many states, even bordering states, have different laws on this very issue. That many states have a family exclusion, many states do not. And with as mobile a society as we have, we can't control what that each state law occurs. And so, therefore, we need to have some consistency with how we apply these laws. And to counsel, your time has expired. Very good. Thank you. Thank you. We'll hear from the other side. Counsel, may it please the court. My name is Steve Baker. I represent the defendant to Pelley's in this case. Your Honors, Nevada is a jurisdiction that has a very strong public policy of providing minimal level insurance to people who are in cars on our roadways. We've enacted a statutory scheme, which is NRS 485, that requires each vehicle in the jurisdiction to have that minimal. Counsel, before you get started on that argument, may I inquire, what is your response to the concern which is shared by this Court that there may not be jurisdiction in the court of appeals yet? With respect to the jurisdictional issue, I believe Justice Gold gave sort of the option of briefing it after this hearing or a presentation. No, that very well may be. I'm just wondering, do you have a thought at this time on the merits? I do not, Your Honor. All right. Very good. You talked about the strong Nevada public policy. Yes, Your Honor. How do you handle the case of Sotirakis v. United Service Automobile Association, where the Nevada Supreme Court held that California law applied to the interpretation of an automobile insurance policy with respect to an accident that occurred in Nevada, where all the contacts were in California and the only thing that happened was the accident in Nevada? There is a difference, because here Tony was now a resident of Nevada, but the children weren't. It's a factual issue, and it's an issue that's handled under Williams, where our Supreme Court has said that we will only ignore the law of the issuing State if it completely deprives the injured individual of any benefits in Nevada. And in the – and I have difficulty pronouncing the name of the case, Your Honor, but it's Sotirakis case. There were two cars involved, Your Honor, and the other car had third-party liability, which is available to the injured people in the accident. So in this case, in the Sotirakis case, by enforcing the family exclusion provision, it would not exclude the third-party liability insurance from the other vehicle, and so they could be compensated for their particular injury in that particular case. In Williams, it was a very similar issue. Well, wait a minute. Are you telling me that the rule in Nevada is we have one choice of law rule where there's another full pocket and one choice of law rule where there is no other full pocket? Almost exactly, Your Honor. What happens in the State of Canada – We'll take another look at that case. What happens in Nevada, Your Honor, is that our Supreme Court has held that they will not enforce the choice of law of the other State if it completely deprives the injured person of benefits. And that's consistent with the statutory scheme to have minimum insurance on every car in the State. In the case that you were referring to, the claimant could make a claim against the third-party liability of the other negligent individual in the case and therefore receive compensation for his injuries. So in that particular case, the absolute absence of any benefit to the injured individual would not exist. And then if you look at the – Speaking of the injured individuals, what are we to make about the residency of the children and the residency of Tony, who is the insured? In terms of what, Your Honor? Well, do you have a position – you heard my conversation with your opposing counsel. Do you have a view as to the residency of the children and the residency of Tony? I would believe that Tony, under Nevada law, would probably be a resident of the State of Nevada. The children had not stayed in the jurisdiction for a particular period of time, but had demonstrated a period of intent to remain in the jurisdiction. So I think that one might be somewhat up in the air. There is no finding in the record with respect to residency. I agree with that, Your Honor. Is that a defect? In the record, Your Honor, I don't think with respect to the particular context of this case, because what it is is really a choice of law issue with respect to whether coverage exists for the children. And if you look at the Stevers case, the Stevers case said, we'll look at residency, we'll look at the place of contact, we'll look at the – But that's an element in Sotorakis. The driver of the car was a California resident. Absolutely, Your Honor. And all of that is 100 percent relevant until the time it becomes a – an issue of the State's interest in providing that minimum insurance, which is the central issue in the conflicts case in this particular case. In Stevers, the issue is that – Counsel, Judge Gould, on that issue, you know, how do you deal with the argument made by appellant that when Progressive Gulf writes this insurance for someone in Mississippi and, you know, with a car then based there, that their rate structure is based on – on the law of the State that lets them have an exclusion? I mean, I assume that excluding family makes the insurance cheaper than if they're covered. I would – How do you deal – how do you deal with that in a choice of law analysis? I would frame it exactly in the choice of law context, Your Honor, in that Nevada, by enacting NRS 485, has the requirement of the minimum insurance of 1530 on each car operating on the roads in our jurisdiction. And in terms of the choice of law, it runs in favor, that statute, of the injured insured, not of the insurer or of the insurance company. So again, with respect to a Stevers analysis, what our Supreme Court had said was, even if you meet all the requirements of the Sotirakis case, what you're still going to look at is our public policy of making sure each car in the State carries that 1530 insurance. So if you have substantial contacts, if you have the place of contracting, if you have all of the elements set forth in the Sotirakis case, and public policy mandates the 1530 in Nevada, Nevada is still going to choose the choice of law. Well, now, counsel, are you arguing, in effect, that suppose we're dealing with three Mississippi residents, policy purchase in Mississippi, they're driving through Nevada, that the 1530 applies? The family exclusion 1530 provision, Your Honor. Right. If the case is brought in the courts of the State of Nevada, Your Honor, I would say that, yes, that would be exactly the case. On the theory that? The theory that Nevada, on the public roads of the State of Nevada, has adopted a strong public policy for people using our public roads to have 1530 insurance available to them. And this should be noticed, then, to insurers around the country, in effect? I think insurance companies are on notice that there's a variety of different jurisdictions and cars drive through those jurisdictions and they have different insurance rules. And if you look at the Salas case, that's a very interesting case with respect to this particular issue, because that has to do with rental car companies in Nevada that are providing two short-term lessees renter cars, and they travel back and forth between different States and different jurisdictions. And in the Salas case, the court held that even if the driver of the car, who is the short-term lessee, has their own liability insurance, the rental car company will still be responsible for 1530 coverage on that car if it leaves the insured undercompensated with respect to the injuries that they received in the accident. So these are companies that are incorporated in jurisdictions differently, licensed in different jurisdictions other than Nevada, have different license plates and registrations. And in the State of Nevada, it was still held that those companies had to have 1530 insurance on the vehicles leased in Nevada, regardless of any other available and applicable insurance. So if Your Honor is asking me, do I think insurance companies should calculate reimbursement costs into the fact that the cars that people use in this very mobile society travel through the highways? Absolutely. And do I believe that that gives comedy to the balance of the relationships between the States? I do. Nevada, again, has adopted a very strong public policy, and it was put forward in Zobrist, and it was put forward in Baker, and it was put forward in the majority of the cases that we have cited to you, that cars on the roads in Nevada are covered by 1530 insurance. Anything further? It seems, counsel, that it's somewhat chaotic from the underwriter's point of view, and maybe that is the way the law has to be. But if, in fact, the company writing the policy to a Mississippi resident for a car there has to underwrite a risk that some far-flung State will have a policy invalidating an exclusion, it may make the insurance more expensive for everyone in Mississippi to buy. Would you like me to respond, Your Honor? I think that's exactly why our courts have held that the exclusion is only valid up to the minimum limits of 1530. You're not putting those extra jurisdictional insurance companies at the risk of million-dollar policies, $100,000 policies. You're putting it at the risk of paying the minimum insurance available under NRS 485. And that minimum insurance distributed and amortized over the population of Mississippi I really in my ---- respectfully should not abrogate the right of the State of Nevada to enforce its very strong public policy to have minimum insurance available to individuals on our roadways. All right. Thank you, counsel. Your time has expired. Thank you. I should say, just for the notice of both counsel, that you should anticipate receiving an order from the Court asking for your analysis of the jurisdictional status of this case on appeal to this Court. Thank you, Your Honor. With that proviso, the case just argued will be submitted for decision, and we will hear argument now in Gaines v. Douglas County School District. Judge O'Scanlan, could we take a very brief break? Absolutely. The Court will take a 10-minute recess.
judges: O'scannlain, Gould, Bea